NOT RECOMMENDED FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CASE NO. 07-CV-42-JBC

STEPHEN L. KELLER and
BOBBY G. GARRETT                                              PETITIONERS

VS:                    **MEMORANDUM OPINION AND ORDER**

STEPHEN DEWALT                                               RESPONDENT

\* \* \*   \* \* \*   \* \* \*   \* \* \*   \* \* \*

Stephen L. Keller ("Keller") and Bobby G. Garrett ("Garrett") are prisoners, incarcerated at the Federal Medical Center in Lexington, Kentucky ("F.M.C.-Lexington"), who have filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Dkt. 2].[1]  This matter is before the Court for screening.  28 U.S.C. § 2243; *Harper v. Thoms*, 2002 WL 31388736, \*1 (6th Cir. 2002).

As petitioners are appearing *pro se*, their petition is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999).  During screening, the allegations in the petition are taken as true and liberally construed in their favor.  *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001).  But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it

---

[1] Petitioners correctly identified Stephen Dewalt, the Warden at F.M.C.-Lexington, as the respondent in this action.  The Clerk of the Court will be directed to correct the docket to reflect that Stephen Dewalt is the respondent in this matter.

determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

## I.    Background

On September 14, 1990, a jury found Garrett guilty of the sale or distribution of narcotics in violation of 28 U.S.C. § 846.  On February 6, 1991, Garrett was sentenced to 31 years of incarceration to be followed by a three-year term of supervised release.  The Eleventh Circuit affirmed that conviction and sentence on direct appeal on October 16, 1992.  Garrett filed a motion to vacate that sentence pursuant to 28 U.S.C. § 2255, represented by counsel Susan G. James. The district court denied that motion, and the Eleventh Circuit denied Garrett's request for a certificate of appealability. *United States v. Garrett*, 90-CR-100, Northern District of Georgia [Dkt. 37, 57, 63, 71, 73, 87, 89 therein].

On March 14, 2003, following an extensive trial, a jury found Keller guilty on all counts of a 46-count indictment of fraud, money laundering, and conspiracy to defraud the United States arising out of the prosecution of Kelco, Inc. and Genesis Viatical.  On August 13, 2003, Keller was sentenced to a cumulative total of 168 months of incarceration and a five-year term of supervised release.  On June 9, 2005, the Sixth Circuit affirmed Keller's conviction.  Upon resentencing on September 16, 2005, Keller's sentence was reduced to 120 months of incarceration to be followed by a three-year term of supervised release.  The United States appealed from that revised sentence, which was affirmed by the Sixth Circuit on August 9, 2007. *United*

*States v. Keller*, 03-CR-61, Eastern District of Kentucky [Dkt. 222, 306, 331, 531, 579, 600, 657 therein].

On June 1, 2006, both petitioners were charged with "Severe Phone Abuse - Category 297." On June 6, 2006, petitioners' access to telephones was eliminated in light of the pending charges.  The same day they met with the Unit Disciplinary Team ("UDT"), and were advised that a disciplinary hearing would be held at a later date.  When asked, petitioners requested that attorney James be called as a witness.  The UDT chair refused, and Keller alleges that the UDT chair falsely indicated on a form that petitioner had declined to request a witness.

On June 22, 2006, a disciplinary hearing was held by a Disciplinary Hearing Officer ("DHO").  The DHO issued his findings in a report issued June 30, 2006.  The DHO Report indicates that on May 31, 2006, an employee of the Bureau of Prisons ("BOP") initiated a review of telephone call reports because multiple Personal Account Codes ("PACs") were being were being used to call the same telephone number.  The investigating officer reviewed recordings of multiple calls initiated in May 2006 using Garrett's PAC during which Garrett initiated calls to attorney James and then handed the telephone to Keller to continue the conversation.  Both Keller and Garrett admitted this conduct, but explained that Keller was assisting Garrett with legal matters.  During the hearing, Keller submitted and the DHO considered a one-page letter from attorney James offered in support of this explanation. The report indicates that the foregoing constituted the totality of information considered by the DHO in reaching his findings;

Item III.E of the Report indicates that the DHO did not use any confidential information in reaching his findings.  In his report, the DHO rejected Keller's contention that his behavior was harmless and not intended to be covered by BOP regulations prohibiting such conduct.

The DHO found both Keller and Garrett guilty of the violation and sanctioned each with 14 days in the Segregation Housing Unit ("SHU"), 180 days phone restriction, and the loss of 27 days of good conduct time ("GCT").  [Dkt. 3, Exh. 3 at pgs. 1-4]  Both petitioners challenged the sanction by filing administrative remedies through the BOP inmate grievance system, which were denied.  In November 2006, Keller asked prison staff to investigate why his telephone privileges were not scheduled to be returned until December 29, 2006, when he had expected the 180-day sanction to conclude on December 2, 2006.  Keller states that prison staff informed him that the Special Investigative Service ("SIS") had conducted an investigation of his telephone use prior to the filing of charges against him, and that the pre-hearing suspension of his telephone privileges pursuant to an SIS order did not count as part of the 180-day penalty.  Keller indicates that he had not been informed of SIS's investigation before or during his hearing before the DHO.

In their present petition,[2] Keller and Garrett assert that the hearing before the

_____

[2]  The petitioners have filed a "joint" habeas petition, invoking the court's authority to join claims and parties pursuant to Federal Rule of Civil Procedure 20(a) as authority. It is unclear whether more than one person may join in a single habeas petition, *compare U.S. ex rel. Bowe v. Skeen*, 107 F. Supp. 879, 881 (N.D. W.Va. 1952) (several applicants may not join in a single petition for a writ of habeas corpus) *with*

DHO violated their constitutional rights in three ways. First, they assert that the failure to disclose the contents of the confidential SIS report violated their due process rights, as it would have included exculpatory information showing that Keller was engaged in attorney-client conversations and assisting Garrett with his legal matters. Second, Keller and Garrett assert that the refusal to permit attorney James to testify by telephone violated their due-process right to present testimony in their defense. Third, they assert that the penalty imposed for the violation was far more severe than that imposed on others charged with the same offense but who committed more egregious conduct, in violation of their right to equal protection of the laws.

## II.   Discussion

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court held that before a prison may forfeit a prisoner's good time credits for violation of prison rules, procedural due process requires that the prisoner must receive advance written notice of the claimed violation, should generally be allowed to call witnesses and present evidence in his defense, and must be given a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id*. at 561.

However, the procedural due-process rights described in *Wolff* are required only where the prisoner is being deprived of a thing in which he holds a legally protected

---

*Adderly v. Wainwright*, 58 F.R.D. 389, 400 (M.D. Fla. 1972) (petition for writ of habeas corpus may be brought as a class action), but the Court will determine the claims of both Keller and Garrett in the present case.

property or liberty interest.  *Mitchell v. Horn*, 318 F.3d 523, 531 (3rd Cir. 2003).  A prisoner must therefore possess a legally protected interest in the subject matter at issue before he is entitled to the protections of due process.  For a prisoner, a deprivation of a legally cognizable liberty interest occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Thus, to determine whether a person's right to procedural due process has been violated, a court first inquires whether the government has taken a thing from the plaintiff which is so fundamental to the concept of ordered liberty as to warrant protection under the Due Process Clause.  If so, the court must determine whether the procedures used to deprive the plaintiff of his or her interest were constitutionally adequate.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989).

An inmate possesses a due-process liberty interest in good-time credit which has already been earned and in which the inmate is vested, as it will inevitably affect the inmate's duration of confinement.  *Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Blevins v. Lamanna*, 23 Fed.Appx. 216, 217 (6th Cir. 2001). The question remaining in this case, then, is whether the process employed by the BOP adequately protected that interest.  The Sixth Circuit has explained:

> When a prisoner faces the loss of good time credits, due process requires that a prisoner receive the following hearing rights: 1) written notice of the hearing at least 24 hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call

witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Further, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

*Lee v. Young*, 43 Fed.Appx. 788, 789 (6th Cir. 2002).[3]

Keller and Garrett's first claim, based upon the failure to disclose the contents of a report by SIS which they suppose to exist, fails for several reasons. First, unlike a criminal prosecution where the *Brady* rule applies, a prison has no obligation to disclose the substance of confidential information used in a disciplinary proceeding against an inmate. *E.g., King v. Wells*, 760 F.2d 89, 92 n.2 (6th Cir. 1985). Rather,

---

[3] Petitioners point to BOP regulations which permit inmates to present documentary and testimonial evidence in their defense and require the DHO to make a finding supported by specific facts that any undisclosed confidential information used to reach his findings is reliable. The DHO followed the first regulation by permitting petitioners to testify in their own defense and to present a letter from their attorney regarding the substance of their conversations. The second regulation simply does not apply because the DHO expressly indicated that he did not rely on confidential information in reaching his findings. Finally, the process due in such a hearing is defined by the federal Constitution, not statutes or regulations, and hence even where an agency fails to follow its own regulations, there is no *per se* due-process violation. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[I]t is well-settled that state law does not ordinarily define the parameters of due process for Fourteenth Amendment purposes, and that state law, by itself, cannot be the basis for a federal constitutional violation. *See Purisch v. Tennessee Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996) ("Violation of a state's formal [employment grievance] procedure ... does not in itself implicate constitutional due process concerns.")). Therefore, even where regulations impose procedural requirements in addition to those required by the Constitution, a due-process violation is found only where the *Wolff* requirements are not satisfied.

as explained in *Wolff*, the report of the hearing must merely disclose that such information was used, include a finding that such information was found to be credible, and explain the basis for the credibility finding to the extent that such can be done without compromising the confidentiality of the source. *Wolff*, 418 U.S. at 565; *Hensley v. Wilson*, 850 F.2d 269, 277-78 (6th Cir. 1988). Here, however, the DHO report expressly states that no such confidential information was used in reaching the decision. While the initial investigation of petitioners' conduct may have been commenced at the request of SIS, the substance of that investigation was fully disclosed in the affidavit of S. Hunter and the accompanying call reports. Second, petitioners imply that such an SIS report would be exculpatory because it would disclose that Keller was merely assisting Garrett with his legal activities: "said report would have concluded that an Attorney/Client call did effect." The DHO was already made fully aware of the substance of the telephone conversations by Hunter's report, James's letter, and petitioners' own testimony. The SIS report would therefore have been excludable as merely cumulative to the evidence already before the DHO. *Russell v. Coughlin*, 782 F.Supp. 876, 880 (S.D.N.Y. 1991), *rev'd in part on other grounds*, 15 F.3d 219, *modified on denial of reh'g, aff'd in part*, 35 F.3d 55 (2nd Cir. 1994). The DHO also correctly noted that the substance of the telephone conversations was simply irrelevant to the petitioners' guilt or innocence of the charge, which was premised upon Keller's participation in a telephone call initiated by use of Garrett's PAC. *Id.* (hearing officer's exclusion of inmate's requested witnesses in prison

disciplinary proceeding did not violate due process where proffered testimony of two witnesses was duplicative and/or nonprobative).

Keller and Garrett next claim that the DHO violated their due process rights by refusing to permit James to testify by telephone.  While inmates are entitled to call witnesses or otherwise present evidence in their defense, this right is not absolute. As previously noted, an inmate is not entitled to call witnesses whose testimony is either irrelevant to the charge or is merely cumulative to what has already been established by other evidence.  *Roberts v. Champion*, 255 F.Supp.2d 1272, 1284 (N.D. Okla. 2003) (inmate's disciplinary proceedings satisfied due-process requirements where inmate was allowed to submit testimony from witnesses in the form of written witness statements).  Here, the testimony of attorney James was presented to the DHO in the form of a written letter, and Keller indicates that the testimony he wished to elicit related to the substance of the conversations between himself and attorney James, not whether Keller was present and used the telephone after Garrett had initiated the call using his PAC.  Because the substance of the conversations was irrelevant to the violation charged and James's testimony had already been established by other evidence, the preclusion of James' testimony did not deprive petitioners of a hearing in full compliance with the Due Process Clause.

Petitioners' third claim arises under the Equal Protection Clause, as they assert that they received a penalty demonstrably more severe than other inmates charged with similar misconduct.  Equal-protection challenges to the actions of the federal

government are judged under the Fifth Amendment by the same standards applicable to state actions challenged under the Equal Protection Clause of the Fourteenth Amendment. *Richardson v. Belcher*, 404 U.S. 78, 81 (1971). The government is required to show only a rational basis for its actions unless the actions involve a suspect class or a fundamental right. *Clements v. Fashing*, 457 U.S. 957, 963 (1982). Petitioners do not assert that they are members of a protected class – indeed, they compare their punishments to that imposed upon another prisoner. *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997) (prisoners are not a suspect class entitled to strict scrutiny). Under such circumstances, an equal-protection claimant must demonstrate not merely that he was treated differently from others similarly situated but that such different treatment was not rationally related to a legitimate government interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

Petitioners point to the discipline imposed upon another inmate who used the prison's telephone system to arrange for individuals outside the prison to send money to other inmates within the prison in order to satisfy the first inmate's "obligations" to those other inmates. This inmate was charged with a Code 397 violation for improper use of the telephones, which is a lower-severity offense than the Code 297 violation charged to petitioners Keller and Garrett. This inmate was punished with 90 days' loss of telephone privileges and commissary privileges, compared to the petitioners' punishment – 180 days loss of telephone privileges, 2 weeks in the SHU,

-10-

and 27 days' lost good conduct time.

The Court begins its review of the sanctions imposed in this case with the

Supreme Court's admonition that

> the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977).

Moreover,

> [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Pell v. Procunier*, 417 U.S. 817, 827 (1974).

In commenting upon the offense conduct, the DHO stated:

> The DHO notes policy is clear concerning your behavior.  That is, talking on the telephone while another inmate's PAC number is engaged is considered telephone abuse which circumvents our monitoring procedures.  In other words, inmate Garrett's name and register number appeared on the monitoring screen as staff monitored the calls in question.  However, it was not inmate Garrett speaking on the telephone; it was you, as evidenced by Section Eleven on the Incident Report.  Additionally, you admit to this behavior.  Consequently, you circumvented the institution's monitoring efforts and engaged in this misconduct five times over a twelve day period.

> Contrary to your opinion, the DHO notes telephone related prohibited acts represent unique and serious threats to the safety, security, and orderly operation of correctional facilities, as well as jeopardize the protection of the public.  The Bureau of Prisons must be able to

efficiently and accurately monitor inmate telephone calls, and identify the inmate caller.  It is more reasonable to believe, your behavior constituted telephone  abuse in the high category of the prohibited act scale versus the moderate category as you contend.

The Court concludes that the DHO articulated a justification for the punishment imposed that amply satisfies the minimal requirement that it bear a rational relationship to the BOP's goals in maintaining institutional security and control.  Petitioners' equal-protection claim therefore fails as a matter of law.  *Shehee v. Lutrell*, 199 F.3d 295, 301 (6th Cir. 1999); *Gwinn v. Awmiller*, 354 F.3d 1211, 1228(10th Cir. 2004).

## III.   CONCLUSION

Accordingly, it is **ORDERED** as follows:

1.     The Clerk of the Court is directed to substitute Warden Stephen Dewalt as the sole respondent in this matter.

2.     Petitioners' petition for a writ of habeas corpus [Dkt. 2] and "2241 Motion to Vacate BOP's Incident Report in this Joiner Motion pursuant to Rule 20(a)" [Dkt. 3] are **DENIED.**

3.     The Court certifies that any appeal would not be taken in good faith.  28 U.S.C. §915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

4.     Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

Signed on September 23, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY